# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| JAMAA ANTHONY CINQUE, ) | 3:09-cv-00229-ECR (RAM) |
| ) | |
| Plaintiff, ) | **REPORT AND RECOMMENDATION** |
| ) | **OF U.S. MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| BRIAN WARD, et al., ) | |
| ) | |
| Defendants. ) | |

This Report and Recommendation is made to the Honorable Edward C. Reed, Jr., Senior United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4.

Before the court is Defendants' Motion to Dismiss. (Doc. #14.)[1] Plaintiff has opposed (Doc. #18), and Defendants have replied (Doc. # 19). Also before the court is Plaintiff's Motion to Strike. (Doc. #20.) Defendants have opposed (Doc. #21), and Plaintiff has replied (Doc. # 25.) After a thorough review, the court recommends that Defendants' Motion to Dismiss be granted, in part, and denied, in part, and Plaintiff's Motion to Strike be denied.

## I. BACKGROUND

At all relevant times, Plaintiff Jamaa Anthony Cinque was in the custody of the Nevada Department of Corrections (NDOC). (Pl.'s Compl. 1 (Doc. #6).) Plaintiff is currently an inmate at the Lovelock Correctional Center (LCC); however, the allegations set forth in Plaintiff's

---
[1] Refers to the court's docket number.

1 complaint pertain to events taking place when he was an inmate at the Southern Nevada
2 Correctional Center (SNCC). (*Id.*) Plaintiff, a *pro se* litigant in the custody of the Nevada
3 Department of Corrections, brings this action pursuant to 42 U.S.C. § 1983 and the Nevada
4 State Constitution. (*Id.* at 3.) Defendants are various NDOC administrators and employees
5 and the State of Nevada. (*Id.* at 2-3.) Plaintiff seeks declaratory and monetary relief. (*Id.* at
6 8-9.)

7 In a screening order issued July 1, 2009, the court dismissed the State of Nevada and
8 the Director of the NDOC from this action. (Doc. #5 at 3-4.) However, the court found that
9 Plaintiff may be able to prove facts that would entitle him to relief on due process and equal
10 protection claims, which entitled him to proceed on his complaint. (*Id.* at 4-6.)

11 Plaintiff's complaint contains allegations giving rise to several claims.

12 In Count I, Plaintiff claims that Defendant Vare recklessly disregarded a risk to
13 Plaintiff's safety in violation of the Eighth Amendment by placing him in administrative
14 segregation. (Pl.'s Compl. 3-5.) Plaintiff also alleges that Defendant Vare violated Plaintiff's
15 right to due process and equal protection under the Nevada State Constitution and United
16 States Constitution by placing Plaintiff in administrative segregation after Plaintiff provided
17 Defendant Vare with a "hit list." (*Id.*)

18 In Count II, Plaintiff claims that Defendants Pharris and Ward violated Plaintiff's right
19 to due process and equal protection under the Nevada State Constitution and United States
20 Constitution by charging and finding Plaintiff guilty of a disciplinary charge without adequate
21 evidence. (*Id.* at 3-4, 6-7.)

## II. MOTION TO STRIKE

23 Plaintiff moves pursuant to Fed. R. Civ. P. 12(f) to strike certain arguments and
24 information contained in Defendants' Reply to Plaintiff's Opposition to Defendants' Motion to
25 Dismiss. (Pl.'s Mot. to Strike 2 (Doc. #20).)

26 Under Fed. R. Civ. P. 12(f), a court "may strike from a pleading any insufficient defense
27 or any redundant, immaterial, impertinent, or scandalous matter." Only pleadings are subject

28

2

to motions to strike. *Id.*; *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). Under Federal Rule of Civil Procedure 7(a), "pleadings" include complaints, answers, replies to counterclaims, answers to cross-claims, third-party complaints, and third-party answers. Fed. R. Civ. P. 7(a). As such, a motion to strike under Rule 12(f) is not the procedurally proper method to seek the exclusion of information contained within a reply to a motion to dismiss. Consequently, Plaintiff's Motion to Strike should be denied.

### III. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

**A.     Legal Standard**

"A dismissal under Fed.R.Civ.P. 12(b)(6) is essentially a ruling on a question of law." *North Star Int'l v. Ariz. Corp. Comm.,* 720 F.2d 578, 580 (9th Cir. 1983) (citation omitted). At minimum, a plaintiff should state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint need not contain detailed factual allegations, but it must contain more than "a formulaic recitation of the elements of a cause of action." *Id.* at 555. The Rule 8(a) notice pleading standard requires the plaintiff to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* (internal quotations and citation omitted). The "plausibility standard" does not impose a "probability requirement," rather, it requires a complaint to contain "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.*

In considering a motion to dismiss for failure to state a claim upon which relief may be granted, all material allegations in the complaint are accepted as true and are to be construed in a light most favorable to the non-moving party. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-38 (9th Cir. 1996) (citation omitted). However, this tenet is "inapplicable to legal conclusions." *Iqbal*, 129 S.Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "While legal conclusions

can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 1950. Additionally, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* A court should assume the veracity of well-pleaded factual allegations and "then determine whether they plausibly give rise to an entitlement to relief." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id.* (citations, brackets, and quotation omitted). Thus, a complaint may be dismissed as a matter of law for "(1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *Smilecare Dental Group v. Delta Dental Plan,* 88 F.3d 780, 783 (9th Cir 1996) (quoting *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 534 (9th Cir. 1984)).

A *pro se* plaintiff's complaint must be construed liberally and can only be dismissed where it appears certain that the plaintiff would not be entitled to relief. *Ortez v. Washington County, State of Or.,* 88 F.3d 804, 807 (9th Cir. 1996). Although allegations of a *pro se* complaint are held to a less stringent standard than formal pleadings drafted by a lawyer, *Haines v. Kerner,* 404 U.S. 519 (1972), sweeping conclusory allegations will not suffice. *Leer v. Murphy,* 844 F.2d 628, 634 (9th Cir. 1988).

**B.    Discussion**

First, Defendants argue they should be dismissed from this action to the extent Plaintiff asserts claims against them under 42 U.S.C. § 1983 in their official capacity for damages. (Defs.' Mot. to Dismiss 14 (Doc. #14).) Plaintiff concedes this point. (Pl.'s Opp'n to Mot. to Dismiss 2 (Doc. #18).) Therefore, to the extent that Plaintiff alleges damages claims against Defendants under 42 U.S.C. § 1983 in their official capacities, these claims should be dismissed. *See Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71 (1989).

Second, Defendant Vare argues that Plaintiff fails to state a plausible claim in Count I,

4

and thus, Count I should be dismissed.² (Defs.' Mot. to Dismiss 9.) Specifically, Defendant Vare argues that Plaintiff's due process claim under the Nevada Constitution should be dismissed. (*Id.*)

1. Due Process Claims

Defendant Vare contends that despite Plaintiff's argument in his opposition that his claims have been "federalized," Plaintiff's Count I only asserts a claim under the Nevada Constitution and not the United States Constitution. (Defs.' Reply 4.) However, in line with this court's obligation to liberally construe Plaintiff's complaint, the court construes Plaintiff's complaint as stating due process claims arising under both the Nevada Constitution and the United States Constitution and addresses them below.

Because the Due Process Clause of the Nevada Constitution "virtually mirror[s] the language in the United States Constitution," Nevada courts look to federal caselaw for guidance in interpreting the Due Process Clause of the Nevada Constitution. *Reinkemeyer v. Safeco Ins. Co. of Am.*, 16 P.3d 1069, 1072 (Nev. 2001). Thus, the court analyzes Plaintiff's due process claims arising under the Nevada Constitution and United States Constitution under the same standard.

Plaintiff claims that Defendant Vare placed Plaintiff in administrative segregation without a hearing after Plaintiff provided Defendant Vare with a "hit list" given to Plaintiff by another inmate. (Pl.'s Comp. 3.) Plaintiff alleges that he remained in administrative segregation from November 7, 2007, until May 22, 2008, and was treated the same as disciplinary segregation inmates. (*Id.*) Plaintiff claims that he was never afforded a due process hearing. (*Id.* at 5.)

---

² The court notes that Defendants attach evidence outside the pleadings to their motion to dismiss. In general, if a district court considers evidence outside the pleadings when ruling on a Rule 12(b)(6) motion to dismiss, the motion will be treated as one for summary judgment. Fed. R. Civ. P. 12(d). There is, however, a narrow exception allowing the court to consider a limited set of documents without converting the motion into one for summary judgment, including documents attached to the complaint, matters of judicial notice, or documents incorporated by reference in the complaint upon which the complaint "necessarily relies." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). Defendants' evidence falls outside of this narrow exception. The court declines to consider Defendants' evidence and, thus, does not convert Defendants' motion to dismiss into a motion for summary judgment.

To state a cause of action for deprivation of procedural due process, a plaintiff must first establish a liberty interest for which the protection is sought. *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003). Liberty interests can arise both from the Constitution and from state law. *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). First, under the Constitution itself, a liberty interest is implicated when the conditions of confinement "[exceed] the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force." *Mitchell v. Dupnik*, 75 F.3d 517, 523 (9th Cir. 1996) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). The Due Process Clause does not confer a liberty interest in being confined in the general prison population instead of administrative segregation. *Hewitt v. Helms*, 459 U.S. 460, 466-68 (1983). Here, Plaintiff fails to assert a liberty interest in remaining in the general population under the Due Process Clause itself.

Second, liberty interests created by the state are generally limited to freedom from restraint that "impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). To determine whether a restraint imposes "atypical and significant hardship," a court considers a condition or a combination of conditions or factors on a case by case basis, rather than invoking a single standard. *Serrano*, 345 F.3d at 1078. Three factors guide this inquiry: "(1) whether the challenged condition mirrored those conditions imposed upon inmates in administrative segregation and protective custody, and thus comported with the prison's discretionary authority; (2) the duration of the condition, and the degree of restraint imposed; and (3) whether the state's action will invariably affect the duration of the prisoner's sentence. *Id.* (citing *Sandin*, 515 U.S. at 486-87; *Keenan v. Hall*, 84 F.3d 1083, 1089 (9th Cir. 1996)) (quotations omitted). Here, Plaintiffs allegations go to factors one and two of the three-factor inquiry. First, Plaintiff alleges that he was treated as a disciplinary segregation inmate even though he was placed in administrative segregation. Second, Plaintiff claims he remained in administrative segregation for over 180 days. By accepting these allegations as true and construing them in a light most favorable to Plaintiff, the court finds that Plaintiff states

sufficient factual allegations to plausibly allege that his placement in administrative segregation amounted to an "atypical and significant hardship."

Moreover, Plaintiff plausibly alleges that Defendant Vare did not adhere to the required procedural requirements after placing Plaintiff in administrative segregation and keeping him in administrative segregation. Although the Due Process Clause does not require that inmates be housed in the general population, it does require that prison officials follow certain procedural requirements when removing an inmate from the general population. First, prison officials must offer the prisoner the opportunity to present his case to the appropriate official "within a reasonable time after [he] is segregated." *Toussaint v. McCarthy*, 801 F.2d 1080, 1100 (9th Cir. 1986). Second, prison officials must conduct periodic hearings for each prisoner in administrative segregation to determine if segregation is still appropriate. *Toussaint v. McCarthy*, 926 F.2d 800, 803 (9th Cir. 1990). Here, Plaintiff alleges that he was never afforded a hearing even though he remained in administrative segregation from November 7, 2007, to May 22, 2008. These allegations give rise to a plausible claim that Plaintiff was never provided an opportunity to present his case to an official after he was segregated and that he was not provided periodic hearings to determine if segregation was still appropriate. Therefore, Plaintiff plausibly alleges that he was deprived of a protected liberty interest and that he was not afforded proper procedural protections upon placement in administrative segregation. Defendants' motion to dismiss as to Plaintiff's due process claims arising under the Nevada Constitution and United States Constitution should be denied.[3]

2. Equal Protection Claims

Although Defendants do not specifically address Plaintiff's equal protection claims in their motion to dismiss, the court may *sua sponte* dismiss a claim brought by a prisoner under

---

[3] Defendant Vare argues that he is entitled to discretionary-act immunity under Nev. Rev. Stat. § 41.032(2) as to Plaintiff's claim arising under the Nevada Constitution. (Defs.' Mot. to Dismiss 7-9.) Because the court declines to convert Defendants' motion to dismiss into a motion for summary judgment, and does not look beyond the pleadings in ruling on the instant motion, the court does not reach this defense at this time. Accordingly, the court denies Defendants' motion, as to the due process claims in Count I, without prejudice, and Defendant Vare may renew his defense based on discretionary-act immunity in a subsequent dispositive motion.

1  Section 1983 for failure to state a claim. 42 U.S.C. § 1997e(c)(1). Therefore, the court considers
2  whether Plaintiff's equal protection claims state viable claims for relief.

3  Plaintiff asserts equal protection claims under both the Nevada Constitution and the
4  United States Constitution in Count I and Count II. (Pl.'s Compl. 3-4, 6.) Nevada courts "have
5  interpreted the standard of the Equal Protection Clause of the Nevada Constitution to be the
6  same as the federal standard . . . ." *Armijo v. State*, 904 P.2d 1028, 1029 (Nev. 1995).
7  Therefore, the court analyzes Plaintiff's equal protection claims arising under the Nevada
8  Constitution and United States Constitution under the same standard.

9  In order to state a viable equal protection claim, Plaintiff "must show that the defendant
10 acted with an intent or purpose to discriminate against him based upon his membership in a
11 protected class." *Serrano v. Francis*, 345 F.3d 1971, 1982 (9th Cir. 2003) (citing *Barren v.
12 Harrington*, 132 F.3d 1193, 1194 (9th Cir. 1998)). "Intentional discrimination means that a
13 defendant acted at least in part *because of* a plaintiff's protected status." *Id.* (citing *Maynard
14 v. City of San Jose*, 37 F.3d 1396, 1404 (9th Cir. 1994) (emphasis in original). Here, Plaintiff
15 does not allege in either Count I or Count II that Defendants intentionally discriminated
16 against him because of his membership in a protected class.

17 Where state action "does not implicate a fundamental right or a suspect classification,
18 the plaintiff can establish a 'class of one' equal protection claim by demonstrating that [he] 'has
19 been intentionally treated differently from others similarly situated and that there is no rational
20 basis for the difference in treatment.'" *Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d 936, 944
21 (9th Cir. 2004), *overruled on other grounds by Shanks v. Dressel*, 540 F.3d 1082, 1087 (9th
22 Cir. 2008). In this case, the substance of Plaintiff's allegations do not indicate that he has been
23 intentionally treated differently from others similarly situated. Therefore, Plaintiff fails to
24 plausibly state equal protection claims, and those claims should be dismissed.
25 / / /
26 / / /
27 / / /
28

8

## **IV. MOTION TO DISMISS FOR FAILURE TO EXHAUST**

**A.     Legal Standard**

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  An inmate must exhaust his administrative remedies irrespective of the forms of relief sought and offered through administrative avenues. *Booth v. Churner*, 532 U.S. 731, 741 (2001).  The Supreme Court has clarified that exhaustion cannot be satisfied by filing an untimely or otherwise procedurally infirm grievance, but rather, the PLRA requires "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006).  "Proper exhaustion" refers to "using all steps the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Id.* (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original).

This court has interpreted *Woodford* as setting forth two tests for "proper exhaustion": (1) the "merits test," satisfied when a plaintiff's grievance is fully addressed on the merits by the administrative agency and appealed through all the agency's levels, and (2) the "compliance test," satisfied when a plaintiff complies with all critical procedural rules and deadlines. *Jones v. Stewart*, 457 F. Supp. 2d 1131, 1134 (D. Nev. 2006).  "A finding that a plaintiff has met either test is sufficient for a finding of 'proper exhaustion'.  Defendants must show that Plaintiff failed to meet both the merits and compliance tests to succeed in a motion to dismiss for failure to exhaust administrative remedies." *Id.*

The failure to exhaust administrative remedies is treated as a matter in abatement and is properly raised in an unenumerated Rule 12(b) motion. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir.2003), *cert. denied*, 540 U.S. 810 (2003). Failure to exhaust administrative remedies is an affirmative defense, and defendants bear the burden of raising and proving failure to exhaust. *Id.*  A court, in deciding a motion to dismiss based on exhaustion, may look beyond the pleadings and decide disputed issues of fact without converting the motion into one

1  for summary judgment. *Id.* (citing *Ritza v. Int'l Longshoremen's & Warehousemen's Union*,
2  837 F.2d 365, 368 (9th Cir. 1988) (per curiam)). If a court concludes that the prisoner bringing
3  a suit has failed to exhaust nonjudicial remedies, "the proper remedy is dismissal of the claim
4  without prejudice." *Id.* at 1120.

5  For prisoners within the NDOC system, exhaustion of administrative remedies requires
6  compliance with the Inmate Grievance Procedure set forth in NDOC Administrative Regulation
7  740 (AR 740). The administrative process consists of: (1) an Informal Level grievance that is
8  reviewed and responded to by an inmate caseworker; (2) a First Level formal written grievance
9  appealing the informal grievance decision to the warden at the institution where the inmate is
10 housed; and (3) a Second Level grievance appealing the First Level grievance decision, which
11 is decided by the Assistant Director of Operations. (Def.'s Mot. to Dismiss Ex. B.) If an inmate
12 disagrees with the response to any grievance, he may appeal the grievance to the next available
13 level within the prescribed deadlines. (*Id.*)

14 **B.    Discussion**

15 Defendants move to dismiss Count II on the basis that Plaintiff failed to exhaust his
16 administrative remedies. (Defs.' Mot. to Dismiss 9-13.) Defendants contend that Plaintiff
17 failed to timely appeal the disciplinary hearing finding in accordance with AR 740. (*Id.* at 13.)

18 Plaintiff argues that he timely submitted his disciplinary appeal within ten days of his
19 December 10, 2007 disciplinary hearing. (Pl.'s Opp'n to Mot. to Dismiss 6.)

20 Prisoners must "complete the administrative review process in accordance with the
21 applicable procedural rules," to properly exhaust administrative remedies. *Jones v. Bock*, 549
22 U.S. 199, 218 (2007) (quoting *Woodford*, 548 U.S. at 88). "Compliance with prison grievance
23 procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Id*.

24 Here, the prison grievance procedures applicable to Plaintiff are AR 707 and AR 740.
25 Under AR 707, subsection 1.5.1, "[f]ollowing a finding of guilt an inmate shall be advised that
26 [he] may submit <u>one</u> appeal to the Warden using the inmate grievance process outlined in AR
27 740." (Defs.' Reply Ex. D at 17) (emphasis in original). An inmate must file an *informal*

28

*grievance* within ten calendar days when the grievance involves a disciplinary issue. AR 740, subsection 1.4.1.1 (*Id.* at 13) (emphasis added). Under AR 740, subsection 1.4.2.3, "[w]hen an issue goes directly to the Warden for a decision such as disciplinary appeals . . . the inmate shall file an *Informal Grievance* form for tracking purposes." (*Id.* at 14) (emphasis added). Subsection 1.4.2.3 goes on to state that "[u]pon receipt the grievance will be forwarded directly to the Warden for a first level response." (*Id.*) Thus, the applicable prison procedures require a prisoner to submit one informal grievance within ten days of a disciplinary determination, that will be forwarded directly to the Warden for review, to appeal a disciplinary finding of guilt.

Plaintiff provides an informal grievance to show that he exhausted the grievance procedures in appealing the guilty finding from the disciplinary hearing. (Pl.'s Opp'n to Mot. to Dismiss Ex. B.) Because the disciplinary hearing was held on December 10, 2007, Plaintiff was required to appeal the decision before December 20, 2007. Although the informal grievance Plaintiff submits does not contain the signature of the grievance coordinator to show the date the grievance was received, a caseworker responded to the grievance on December 18, 2007. Because the caseworker responded within eight days, Plaintiff must have submitted his grievance at some point before then. Thus, Plaintiff timely submitted his informal grievance within ten days of the disciplinary determination.

The critical inquiry in ascertaining if Plaintiff properly exhausted is whether he was required to submit a timely filed first level grievance after he received the caseworker's informal grievance response. The caseworker responded to Plaintiff's informal grievance by stating, "Please submit as First Level Grievance as this is a disciplinary appeal." (Pl.'s Opp'n to Mot. to Dismiss Ex. B.) This instruction contradicts the provisions of AR 740 that direct an inmate to file an informal grievance that will be "forwarded directly to the Warden." In both *Woodford* and *Jones*, the Supreme Court placed primacy on the prison grievance procedures in elucidating the PLRA exhaustion requirement. In *Jones*, for example, the Court found that the prison's procedures at issue made no mention that an inmate must name particular officials

11

in a grievance, and thus, an inmate was not required to do so to properly exhaust. *Jones*, 549 U.S. at 218. The Court concluded that prison's requirements "define the boundaries of proper exhaustion." In this case, Plaintiff complied with the NDOC's procedural requirements defined in AR 707 and AR 740. Neither administrative regulation instructs an inmate to deviate from the specific procedural dictates when instructed by a caseworker. Because the NDOC's procedural requirements "define the boundaries of proper exhaustion," Plaintiff properly exhausted when he filed an informal grievance in compliance with AR 707 and AR 740; compliance with the PLRA demands nothing more. Therefore, Defendants' motion to dismiss Count II based on Plaintiff's failure to exhaust should be denied.

## V. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an Order **GRANTING** in part and **DENYING** in part Defendants' Motion to Dismiss (Doc. #14) as follows:

- The claims asserted against Defendants under 42 U.S.C. § 1983 in their official capacities with respect to damages should be dismissed with prejudice;
- The equal protection claims in Count I and Count II should be dismissed without prejudice with leave to amend;
- The motion to dismiss as to the due process claims in Count I should be denied without prejudice;
- The motion to dismiss for failure to exhaust administrative remedies with respect to Count II should be denied.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen (14) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. App. P., should not be filed until entry of the District Court's judgment.

DATED: July 28, 2010.

_____
UNITED STATES MAGISTRATE JUDGE